UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL CARLUCCI and      )
MARCIA CARLUCCI,          )
                          )
          Plaintiffs,     )    CIVIL ACTION NO.
                          )    10-12205-DPW
v.                        )
                          )
CNH AMERICA LLC,          )
                          )
          Defendant.      )
                          )


MEMORANDUM AND ORDER
September 14, 2012


     Michael and Marcia Carlucci filed this suit against CNH
America LLC, claiming negligence, breach of express and implied
warranties, and violations of Massachusetts General Laws chapter
93A stemming a construction accident involving one of CNH's skid-
steer loaders.  Michael Carlucci's wife claims loss of
consortium.  CNH has filed a motion to exclude the testimony of
the Carlucci's expert, Matthew Burkart, and a motion for summary
judgment dependent upon that exclusion.  After determining to
grant CNH's motion to exclude Burkhart's testimony, I conclude I
should grant CNH's motion for summary judgment.

**I.  BACKGROUND**

A.  Parties

     Plaintiff Michael Carlucci was injured on April 21, 2008 in
a paving accident at a worksite in Bellingham, Massachusetts.  He

was working for Gracewood Development Corporation at the time. Plaintiff Marcia Carlucci is Michael Carlucci's wife.

Defendant CNH America LLC designed and manufactured the Case Model 90XT skid-steer loader which was involved in the accident. CNH is a Delaware Corporation with a principal place of business in Wisconsin.

B.   Facts

1.   *Skid-Steer Loaders and the Case Model 90XT*

Skid-steer loaders, like the Case Model 90XT here, are compact, highly-maneuverable, four-wheel bucket loaders used in construction and paving.  An image of the 90XT involved in Carlucci's accident is below:



The 90XT skid-steer loader has limited rear visibility, due
to the position of the arms and safety cage over the operator's
bucket seat.  While there is a rear window installed in the
operator's cage, the operator of the 90XT involved in Carlucci's
accident testified that it was difficult to see out the rear
window while operating the loader.  The operating manual requires
the user to sit in the bucket seat with his lap belt on at all
times, which, the operator testified, made it difficult to turn
one's head sufficiently to see out the rear window, something the
operating manual also instructs operators to do before moving in
reverse.

  *2. The Accident*

   On April 21, 2008, Carlucci and two other Gracewood
Development employees were grading and paving a driveway in
Bellingham, Massachusetts.  Carlucci was using a shovel to hand-
grade some gravel while one of his co-workers, William Trudel,
was operating a Case Model 90XT skid-steer loader.

   At some point between 10 a.m. and 10:30 a.m., Trudel was
operating the 90XT in reverse, using the back of the bucket to
grade the driveway.  Trudel knew that Carlucci was working behind
him, and was using a visual reference point along the driveway
wall to guide how far back he could go before entering Carlucci's
work space.  Trudel does not remember whether he looked out the
rear window of the 90XT before backing up towards Carlucci.  The

90XT is equipped with an audible alarm that sounds when the loader is backing up, and the alarm was functioning that day.

In the process of moving in reverse, Trudel ran over Carlucci's right foot with the right rear tire of the 90XT and crushed the bones in Carlucci's foot.

C.  Proceedings

On June 30, 2010, the Carluccis sent a chapter 93A demand letter to CNH.  On November 16, 2010, the Carluccis filed suit in Suffolk Superior Court against CNH alleging negligence, breach of warranties, violation of chapter 93A, and loss of consortium, for the defective design of the 90XT skid-steer loader.  On December 20, 2010, CNH removed the case to this court.

After discovery, CNH filed the two motions that are the subject of this Memorandum and Order: a Motion to Exclude the Testimony of Plaintiff's Expert Witness Matthew Burkart (Dkt. No. 23), and a Motion for Summary Judgment (Dkt. No. 26).

## II.  MOTION TO EXCLUDE MATTHEW BURKART'S TESTIMONY

CNH filed its motion to exclude the testimony of the Carluccis' expert, Matthew Burkart, on the grounds that he is not qualified to provide an expert opinion, and that his opinion lacks foundation and is unreliable.  This challenge arises under Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony.

A.   Burkart's Proposed Testimony

Burkart opined that (1) the 90XT was defectively designed because CNH failed to include devices to increase the loader's rear visibility; and (2) the 90XT did not include sufficient warnings that in certain circumstances a spotter should be used for safe operation.

   1.   *Defective Design*

For his opinion that the 90XT was unreasonably dangerous as a result of a defective design, Burkart suggests that a number of feasible alternative designs for the skid-steer loader would have reduced the risk of injury to Carlucci.

Burkart testified at his deposition that rear or parabolic mirrors could be placed in a number of locations to increase the rear visibility for the driver.  Burkart suggested that mirrors could be placed inside the operator's cage, near the rollover protection bars on either side of the skid-steer, on the side of the machine under the lift-arm, next to the air-conditioning vents, or on other locations.  Instead of a mirror, Burkart also opined that a rear-view camera sending a signal to a closed-circuit television inside the cabin could have been installed on the roof or rear grill of the 90XT.  Burkart opined that either mirrors or a rear-view camera would have prevented Carlucci's accident.

He also proposed that a strobe light or a back-up sensor tied to an audible alarm of increasing frequency would have effectively reduced the risk of an accident. Audible alarms had been used in automobiles and other heavy equipment at the time the 90XT was sold in 2002. Finally, Burkart opined that a rear guard or bumper would have prevented Carlucci from having his foot run over by the rear wheels of the skid-steer loader.

*2. Inadequate Warnings*

For his opinion on the adequacy of the 90XT's warnings, first expressed during his deposition but not found in his expert report, Burkart asserts that CNH's warnings on the 90XT were inadequate. Burkart suggests that CNH should have warned that a spotter may be necessary to ensure safe operation of the 90XT when pedestrians are in the area.

B. <u>Federal Rule of Evidence 702</u>

Under Federal Rule of Evidence 702, before an expert's testimony may be admitted, it must be shown that: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In this context, the trial judge acts as a gatekeeper for the admissibility of expert testimony.

Under the first prong, the trial judge must evaluate the expert's data "to determine if that data provides adequate support to mark the expert's testimony as reliable." *Ruiz-Troche* v. *Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *General Electric Co.* v. *Joiner*, 522 U.S. 136, 146 (1997). But if the expert's testimony "rests upon good grounds, based on what is known, it should be tested by the adversary process---competing expert testimony and active cross-examination ---rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Ruiz-Troche*, 161 F.3d at 85 (internal quotation and citation omitted).

In evaluating the reliability of the methods and principles used by the expert under the second prong of Rule 702, I look to a number of factors, including (1) whether the expert's theory is verifiable; (2) its inherent error rate; (3) whether the theory has been published or subjected to peer review; and (4) how accepted it is within the relevant community. *Id.* at 81 (citing *Daubert*, 509 U.S. at 593-95). These four factors are not the end of the inquiry; rather, they are merely helpful guidelines for a judge to consider in weighing the overall question of

admissibility. *Huber* v. *JLG Industs., Inc.*, 344 F. Supp. 2d 769, 772 (D. Mass. 2003).

Under the third prong, the goal of the trial judge's inquiry is to ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 152 (1999). Once the trial court determines the expert's opinion meets the threshold of reliability in methodology and validity in reasoning, the expert should be permitted to testify as to inferences and conclusions he draws for the finder of fact to afford the opinion such weight as it chooses. *United States* v. *Mooney*, 315 F.3d 54, 63 (1st Cir. 2002).

<u>C.</u> <u>Analysis</u>

*1. Defective Design Opinion*

CNH claims that Burkart's defective design opinion is inadmissible. First, CNH claims Burkart is not qualified as an expert in skid-steer loader design. Second, CNH claims Burkart did not test any of his proposed alternative designs and thus his opinion is not based on sound methodology related to the facts of this case.

I. Inadequate Qualifications

Burkart is not qualified by training, experience, or specialized knowledge to give an expert opinion about the design

of a skid-steer loader, and therefore he cannot be an expert under Rule 702. It is not enough to be, as Burkart is, an engineer with safety training and work experience on cranes.

In *Tokio Marine & Fire Insurance Company* v. *Grove Manufacturing Company*, the First Circuit affirmed a district court's decision to exclude the plaintiff's expert witness on the grounds that he was not qualified under Rule 702. 958 F.2d 1169, 1174-75 (1st Cir. 1992). That case involved a crane that overturned, and a design defect claim that without a load moment indicator, the crane was unreasonably dangerous. *Id.* at 1174. The plaintiff's expert in that case had

> a B.S. in civil (not mechanical) engineering, was licensed as a civil engineer in Pennsylvania and worked for a corporation of consultants organized to assist the insurance industry and lawyers by providing technical information in conjunction with accident investigations. He claimed to be an expert in crane accidents who had investigated over 60 crane cases-20 or 25 of them involving hydraulic cranes, such as that here. In addition, he had some experience preparing design specifications for the purchasing of cranes.

*Id.* However, the expert

> had never designed cranes nor worked for a crane manufacturer. There was no evidence of publication or in-depth study on the subject of cranes. He conceded that he was not an expert in crane maintenance nor in crane operation. He also conceded that he was not an expert on load moment indicators, although he said he had "knowledge about it."

*Id.*

In upholding the exclusion of the proffered expert, the First Circuit observed that as a design defect claim, the case

> called, in essence, for meaningful cost-benefit
> analysis. This required, in turn, considerable
> familiarity with the device itself; with how hydraulic
> cranes work and are operated; with crane design,
> manufacture and marketing; with applicable industry
> standards; and so on. [Plaintiff's expert], however,
> testified that he was not an expert in either load
> moment indicators or crane operation, that he had no
> crane operations experience, and that he had not worked
> for a crane manufacturer. His background did little to
> suggest expert knowledge of relevant economic issues
> and industry standards.

*Id.* Under Rule 702, an expert does not need to have "specific

educational training in the area of expertise" and "need not have

design experience with the particular product in order to render

expert opinion about the unreasonableness of its design." *Id.*

But, the First Circuit held, where an expert lacks relevant

experience, training, and education to testify about design

defects, his testimony is inadmissible. *Id.*

Here, as with the expert in *Tokio Marine*, Burkart is not

qualified to opine about the design elements of the 90XT skid-

steer loader. Burkart is a civil, not a mechanical, engineer,

who is licensed in structural engineering in Pennsylvania. He is

a member of a number of professional societies and

organizations,[1] but none of them involve questions of the design

---

[1] Burkart is a member of the American Society of Civil
Engineers' Committee on Construction Safety, the American Society
of Safety Engineers, and the National Safety Council's
Construction Section, among others. He is also the chair of the
Construction Institute Committee for Construction Site Safety,
and was the chairman of the ANSI A10 Accredited Standards
Committee for Safety in Construction and Demolition Operations
from 1987 to 2000.

of skid-steer loaders.  Likewise, while Burkart has taught a course on construction safety at Spring Garden College, and a United States Department of Labor course on hazard recognition, neither involve design elements of skid-steer loaders.[2]

He is also the founder of AEGIS Corp, an engineering consulting firm specializing in engineering safety and loss control services to the construction and insurance industries. With that firm, Burkart has evaluated and developed procedures for monitoring movement and lifting of heavy loads; trained insurance company contractors and OSHA inspectors on construction safety and safety regulations; investigated construction accidents to determine causes and applicable remedial actions; and co-authored a safety manual on elevated work platforms and scaffolding.

---

[2]  At a hearing, the Carluccis attempted to bolster Burkart's credentials by claiming he had previously been retained by a skid steer loader manufacturer, JCB, based on statements Burkart had made at his deposition.  However, that deposition testimony only underlines the problem with Burkart's purported expert credentials.  Burkart could not recall when he worked for JCB (only that he had done so ten or fifteen years ago); which model of skid-steer loader he worked on; whether he had been asked to evaluate it for its rear visibility, and whether he had, in fact, done so; or whether it had a rear alarm or rear-view camera. Burkart did not keep his recommendations to JCB in his files, whatever those recommendations may have been (he could not remember them).  If Burkart could not recall such salient details, it is improbable that he could have gained expertise sufficient to pass *Daubert*'s qualifications threshold based wholly on that work.

As with the expert in *Tokio Marine*, none of Burkart's education, experience, or training makes him expert in the design of skid-steer loaders. He has only operated a skid-steer loader two or three times, and has only written one report involving a skid-steer loader, where he opined that the lack of a front door on the operator's cage was unreasonably dangerous. He has never "participated in any way in the design of a skid-steer loader," has "not addressed skid steer loaders in any of [his] publications," and does not "pretend to be an expert in the design" of such machinery. Burkart Dep., Dkt. No. 25 Ex. E, at 70:10-17 (agreeing with counsel that he had not participated in their design, and was not an expert in their design); 74:8-19 (stating that he had never published on skid-steer loaders, and was not an expert in their design). While Burkart's background demonstrates some expertise in workplace safety generally, it does not demonstrate any experience, yet alone expertise, in the safe design of skid-steer loaders.

ii. Lack of Sound Methodology

Even if Burkart were to be qualified as an expert in design of a skid-steer loader, I find his methodology in reaching an opinion in this case was not sound, and for that reason as well his opinion must be excluded under Rule 702. As noted above, I look to a number of factors in evaluating the soundness of Burkart's methodology, including (a) whether his theory is

verifiable; (b) its inherent error rate; © whether it has been published or subjected to peer review; and (d) how accepted it is within the relevant community. *Ruiz-Troche*, 161 F.3d at 81 (citing *Daubert*, 509 U.S. at 593-95).

CNH's primary contention is that Burkart has not tested his methodology and his proposed alternative designs (the mirrors, rear-view camera, strobe light, etc.), and instead merely hypothesized that such alternative designs were feasible. For example, Burkart admits that he did not place mirrors at any of his proposed locations on a skid-steer loader to see if they enhanced visibility or were feasible given the 90XT's design and the movement of its loader arms. Burkart Dep., 142:16-20. Nor did he test the rear-view camera system he proposed; instead he assumed it would work for the skid-steer loader, because it had worked with other heavy equipment on which he had seen it installed. *Id.* at 166:13-167:19. Burkart was not aware of any manufacturer who used rear-view cameras on their skid-steer loaders at the time, or offered them as optional components, and the only study he identified[3] in support of his alternative

_____

[3] Burkart alluded to a study which he asserted had tested rear-view cameras, but he could not locate the study in his file and was unable to provide it to CNH. It is therefore impossible to determine its relevance to skid-steer loaders, or even to test its acceptance in the relevant design community.
    Similar defects exist with the studies Burkart cited in support of his alternative design of sonic sensors with increasing alarm frequency. Burkart admitted that the Hyster and Bureau of Mines studies he could think of did not involve skid-

13

design had tested cameras on payloaders, not skid-steer loaders. *Id.* at 161:17-164:8.

Similarly, Burkart did not test the effectiveness of a strobe light, sonic back-up sensor, or bumper on a comparable skid-steer loader; did not cite any studies showing they would be effective on a skid-steer loader; and did not show how any of them installed on the 90XT would have prevented Carlucci's accident. Indeed, Burkart did not inspect the 90XT involved in the accident or any exemplar skid-steer loader, take any measurements of the loader, or visit the scene of the accident in preparing his report.

The Carluccis argue that Burkart did not need to test the feasibility of rear view mirrors or cameras on the skid-steer loader because both were widely used in the industry and had been shown to work on many other types of equipment prior to the accident. For example, Burkart stated at his deposition that rear-view cameras had been in use on construction equipment since the 1990s, and noted that Case's promotional literature in Europe listed rear-view mirrors and rotary beacons as safety options on various models of skid-steer loaders. The Carluccis note that Burkart has extensive experience in construction and workplace safety, and that his familiarity with these devices combined with

---

steer loaders, and he was unable to produce either study. Thus, it is impossible to determine their relevance or acceptance in the design community either.

their general acceptance in the workforce is sufficient to support his expert opinion against CNH's methodology challenge.

Plaintiffs miss the point. CNH's challenge goes to the admissibility of Burkart's opinion by challenging his methodology and the basis for his opinions. If Burkart's opinions are based on speculation, rather than application of known principles to the facts of the case, then they are inadmissible under Rule 702. The Carluccis' attempted defense of Burkart's opinion fails to address this central contention of CNH's motion. While I have not found binding precedent that suggests alternative design testing is mandated in Massachusetts design defect cases, it does assist the expert in determining the costs and benefits of the alternative design, its efficacy, its compatibility, and other factors which play into the feasibility analysis. *See Winters* v. *Fru-Con, Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (noting that although the Seventh Circuit has "not mandated alternative design testing as 'an absolute prerequisite to the admission of expert testimony,'" such testing does provide the expert with information about the alternative's feasibility).

Here, Burkart has performed no testing, made no observations, and performed no studies on skid-steer loaders. If he has never placed mirrors or cameras in or on the 90XT, his conclusions that they would have prevented Carlucci's accident are ipse dixit, because a number of factors in the design of the

15

90XT may have made mirrors ineffective - such as the placement of the load arms, the viewing angle through the rear window, and vibrations on the exterior surfaces of the loader where exterior mirrors may have been placed. Burkart's opinions do not begin to address the "meaningful cost benefit analyses" that *Tokio* Marine, 958 F.2d at 1174 identified as the essence of such opinions in a design defect case.

Because Burkart lacks adequate qualifications as a design expert and because he applies no sound methodology in rendering an opinion, I will grant CNH's motion to exclude Burkart's opinion testimony regarding any alternative design for the skid-steer loader.

   *2.   Warnings Opinion*

Burkart's opinion that CNH's warnings were inadequate does not appear in his expert report. Under Federal Rule of Civil Procedure 26(a)(2)(B)(I), Burkart's expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(I). Because Burkart's report does not contain his opinion about the inadequate warnings, his testimony is inadmissible at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

There is no justification, let alone a substantial justification, for introducing a new theory of liability after

16

the submission of the expert report.  And it can hardly be said

to be harmless coming at the conclusion of discovery.  That is

sufficient grounds to exclude the warning opinion.

Even if I were to permit the belated opinion to be asserted,

I would still find that it fails the Rule 702 challenge CNH

mounts.  Burkart has not disclosed the methodology he used to

determine that a warning should have been included directing that

a spotter be used when pedestrians are in the area of the skid-

steer loader.  While his expert report sets forth at a high

degree of generality a description of the methodology he uses,

the description does not suggest how Burkart belatedly came up

with his opinion about the warning necessary on the 90XT to make

it safe.[4]  Nor did Burkart provide a foundation for his opinion

---

[4]  Burkart's stated methodology was:

> As part of a design methodology a hazard analysis/risk
> assessment must be performed by the designer,
> manufacturer and seller of the equipment/product.  This
> hazard analysis/risk assessment consists of an
> identification of the foreseeable hazards associated
> with a design.
>
> . . .
>
> Once identified, the hazard needs to be eliminated or
> minimized to the fullest extent possible by a hierarchy
> of controls.
>
> First, if possible, eliminate the hazard by designing a
> product with protective components included.
>
> Second, if not possible, provide alternative measures
> such as guards, clamps, or other safety features to
> eliminate or minimize the hazard to the fullest extent

in the form of standards or regulations in the industry, safety studies, or other facts or data necessary to distinguish his opinion from speculation.

Finally, Burkart's testimony is unreliable. In *Bourelle* v. *Crown Equipment Corporation*, the Seventh Circuit affirmed a district court's decision that an expert's testimony about an inadequate warning was inadmissible because the expert did not draft an alternate warning which would have been effective or appropriate in the circumstances. 220 F.3d 532, 538-39 (7th Cir. 2000). The Seventh Circuit noted that the fact the expert had "never even drafted a proposed warning renders his opinion akin to 'talking off of the cuff' and not acceptable methodology." *Id*. at 539. Accordingly, the Seventh Circuit affirmed the district court's decision to exclude the expert's testimony as unreliable. Here, Burkart admitted that he did not draft a proposed warning, let alone test for its efficacy.

Both because as a matter of procedure it is untimely and because as a substantive matter it is inadequately grounded in reliable methodology, Burkart's testimony that the 90XT's warnings were inadequate will be excluded.

---

possible.

Third, if the above procedures do not completely eliminate the hazard, then provide adequate clear and obvious warning to the user.

*See* Burkart Rep., Dkt. No. 25 Ex. F, at 11.

## III.  MOTION FOR SUMMARY JUDGMENT

A.  Standard of Review

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and "[a] fact is material if it has the potential of determining the outcome of the litigation."  *Farmers Ins. Exch.* v. *RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted).

However, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment.  *Sullivan* v. *City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (quotation and citation omitted).

B.  Legal Background

The Carluccis allege four causes of action against CNH: negligence, breach of express and implied warranties, violation of chapter 93A, and a loss of consortium.  However, these four causes of action revolve around two basic theories: (1) that the design of the 90XT was defective for not including rear view mirrors and other safety equipment, and (2) that better warnings apprising the operator of the 90XT of the danger of operating the

machine in reverse should have been given. This second theory, a failure to warn theory, sounds in both negligence and breach of warranty, but the analysis is the same for both, and thus the Carluccis' failure to warn claim will be discussed separately from their other claims.

    *1.   Negligence Claims*

Liability is imposed in products liability actions based in negligence "when a product's manufacturer or seller has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of injury." *Colter* v. *Barber-Greene Co.*, 525 N.E.2d 1305, 1313 (Mass. 1988). Thus, the focus of the inquiry is on the conduct of the manufacturer of the product. *Id.*

In this case, the negligence that is alleged is the defective design of the 90XT skid-steer loader. A products liability case over a defective design is a claim by the plaintiff that the product's design is unreasonably dangerous for the purpose to which it would ordinarily and foreseeably be put. Thus, to make out a prima facie case for a negligent design, a plaintiff must show that the manufacturer had a duty to use reasonable care in designing the product, that the manufacturer breached that duty, and the plaintiff was harmed as a result. However, manufacturers are not under a duty to eliminate all risks in a product, so the plaintiff must also show that there is

"an available design modification which would reduce the risk without undue cost or interference with the performance of the machinery." *Uloth* v. *City Tank Corp.*, 384 N.E.2d 1188, 1193 (Mass. 1978).

    *2.   Breach of Warranty Claims*

    The focus of breach of warranty claims is "whether the product was defective and unreasonably dangerous," not whether the conduct of the manufacturer or seller was unreasonable. *Correia* v. *Firestone Tire & Rubber Co.*, 446 N.E.2d 1033, 1040 (Mass. 1983) (emphasis added).  Governed by Massachusetts General Laws chapter 106, sections 2-314 through 2-318, claims for breaches of express or implied warranties are "basically the same as strict liability theory in tort." *Hayes* v. *Douglas Dynamics*, 8 F.3d 88, 89 n.1 (1st Cir. 1993) (citation omitted).  Thus, a manufacturer "may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true.  A defendant cannot be found to have been negligent without having breached the warranty of merchantability." *Hayes* v. *Ariens Co.*, 462 N.E.2d 273, 275 (Mass. 1984), abrogated on other grounds by *Vassallo* v. *Baxter Healthcare Corp.*, 696 N.E.2d 909, 922 (Mass. 1998).

    To succeed on a breach of warranty claim for a design defect, the Carluccis must prove that the design was "unreasonably dangerous" and therefore not fit for ordinary

usage. *Colter*, 525 N.E.2d at 1314; *see* Mass. Gen. L. ch. 106, § 2-314 (providing that goods must be "fit for the ordinary purposes for which such goods are used"). A design is "reasonably fit" if it avoids the "reasonably foreseeable risks attending the product's use . . . ." *Back* v. *Wickes Corp.*, 378 N.E.2d 964, 969 (Mass. 1978).

    *3.   Chapter 93A Claims*

    Massachusetts General Laws chapter 93A provides treble damages for unlawful or deceptive business practices. Mass. Gen. L. ch. 93A. The Massachusetts Supreme Judicial Court has recognized that "[g]enerally, a breach of warranty constitutes a violation of [chapter 93A]." *Maillet* v. *ATF-Davidson Co., Inc.*, 552 N.E.2d 95, 100 (Mass. 1990). However, a chapter 93A claim cannot stand on its own if no underlying breach of warranty or negligence claim is successful. *See Kearney* v. *Philip Morris, Inc.*, 916 F. Supp. 61, 65 (D. Mass. 1996) (noting that "if plaintiff's claims of breach of warranty and negligence fail, plaintiff's Mass. Gen. L. Ch. 93A claim also fails").

    *4.   Loss of Consortium*

    Marcia Carlucci filed a loss of consortium claim against CNH. Loss of consortium is understood to compensate an individual for the loss of society, companionship, and sexual relations due to an injury to his or her spouse. *See generally Diaz* v. *Eli Lilly & Co.*, 302 N.E.2d 555 (Mass. 1973) (discussing

22

the history and scope of the loss of consortium claim in the common law).  To make out a case for loss of consortium, a plaintiff must prove "a tortious act that caused the claimant's spouse personal injury."  While a loss of consortium claim is sometimes characterized as independent of the spouse's cause of action and the Massachusetts Supreme Court has "not repudiated the implicit prerequisite that the injured spouse have a viable claim," *Sena* v. *Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994), the logic of a consortium claim would appear to require that it fail if the injured spouse has no viable claim.

 *5. Failure to Warn Claims*

 As noted above, failure to warn claims sound in both negligence and breach of warranties.  A failure to warn claim arises when a manufacturer of a product which the manufacturer "knows or should know is dangerous" fails to meet its duty to give warning of such dangers to persons who foreseeably will come in contact with that product.  *MacDonald* v. *Ortho Pharm. Corp.*, 475 N.E.2d 65, 68 (Mass. 1985) (citation omitted).  Liability for failure to give such warnings may be imposed even if there is no negligent design or manufacture.  *Laaperi* v. *Sears Roebuck & Co.*, 787 F.2d 726, 729 (1st Cir. 1986).  In the ordinary case, the adequacy of the warning must be "comprehensible to the average user," conveying the danger "to the mind of a reasonably prudent person."  *MacDonald*, 475 N.E.2d at 71.  A warning is inadequate

if its forcefulness is not "commensurate with the danger involved." *Wolfe* v. *Ford Motor Co.*, 376 N.E.2d 143, 146 (Mass. App. Ct. 1978).

C.  Analysis

CNH's motion for summary judgment is predicated on its motion to exclude the expert testimony Matthew Burkart.  Without that testimony, CNH argues, the Carluccis cannot make out a prima facie case on any of their claims.

Under Massachusetts design defect law, a plaintiff generally must provide expert testimony when the product is complex or technical such that it is beyond the common knowledge of the jury. *See, e.g., Esturban* v. *Massachusetts Bay Transp. Auth.*, 865 N.E.2d 834, 835 (Mass. App. Ct. 2007) (noting that where product involved is a complex machine, a jury is left to "impermissible conjecture and surmise" about the cause of an accident without expert testimony about the product's design). And, as noted above, the plaintiff must also show that an alternate design was available which would reduce the risk of harm without interfering with the product's functionality or unduly increasing its cost. *See Gillespie* v. *Sears, Roebuck & Co.*, 386 F.3d 21, 26-27 (1st Cir. 2004).  Expert testimony is often necessary to show that such an alternative design would have prevented the harm from occurring in the first place (the causation element). *Id.* at 27.

Here, having granted CNH's motion to exclude Burkart's testimony, I conclude the Carluccis' claims fail. As to their negligence and breach of implied warranty claims for design defects in the 90XT, the Carluccis' lack of expert testimony is fatal. *See id.* The 90XT is a complex machine with a number of interrelated design parts; indeed, its operator's manual is 252 pages long, detailing technical specifications of the skid-steer loader and its operation. Without competent expert testimony, the jury would be left to speculate (as did Burkart) regarding whether an alternative design would have prevented the injury. As a consequence, the Carluccis are unable to meet their burden of showing causation and summary judgment is appropriate in CNH's favor.

To the extent the Carluccis' complaint presents an express warranty claim under Count II, it is barred. It is undisputed that the 90XT came with a 1-year warranty that expired before the accident, and therefore the Carluccis' express warranty claim is not timely by the terms of the warranty itself.

The failure to warn claim is not categorically barred by exclusion of Burkart's belated opinion. As noted above, a failure to warn claim asks whether the warning is "comprehensible to the average user," conveying the danger "to the mind of a reasonably prudent person." *MacDonald*, 475 N.E.2d at 71. This does not necessarily require expert testimony. *See Cottam* v. *CVS*

*Pharmacy*, 764 N.E.2d 814, 823 (Mass. 2002) ("CVS argued below, and argues on appeal, that if it had any duty to warn, the plaintiff must prove the scope and breach of that duty by expert testimony. We disagree."). Here, the Carluccis have not provided a single competent witness who has opined that the warnings on the skid-steer loader were inadequate or otherwise failed to convey the danger of the loader to a reasonable person. There is nothing in the bits and pieces of the testimony by the various actors in this case that supports a failure to warn claim. If no adequate lay evidence exists in the record, then expert testimony is necessary to give the jury an adequate basis to decide the failure to warn claim. Otherwise, a jury could not find that the warnings were inadequate except by engaging in impermissible conjecture. Since no such competent expert testimony has been provided, summary judgment is appropriate.

Because the Carluccis' warranty and negligence claims are subject to summary judgment, their chapter 93A claim which is based on them fails as well. Marcia Carlucci's loss of consortium claim fails because there has been established no surviving claim of a tortious act on which it depends.[5]

_____

[5] Although not separately briefed by the parties, there would appear to be no independent vitality to the consortium claim for Marcia Carlucci in the absence of a surviving claim by Michael Carlucci. Consequently, summary judgment as to Michael Carlucci's claims leads ineluctably to summary judgment as to Marcia Carlucci's dependent consortium claim.

## IV.  CONCLUSION

For the reason set forth above, I (1) GRANT CNH's motion to exclude Matthew Burkart's testimony (Dkt. No. 23), and (2) GRANT CNH's motion for summary judgment (Dkt. No. 26).

**_/s/ Douglas P. Woodlock_**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE